1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   ANTHONY M. CURCIO,

12                                    Plaintiff,

        vs.

13

14   WACHOVIA MORTGAGE
     CORPORATION and DOES 1-10,

15
                                    Defendants.

16

CASE NO. 09-CV-1498-IEG (NLS)

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT**

**(Doc. No. 5)**

17        Presently before the Court is defendant Wachovia Mortgage, FSB's[1] ("Wachovia") motion

18   to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff has filed an opposition and

19   Wachovia has filed a reply.  The Court finds the motion appropriate for disposition without oral

20   argument pursuant to Local Civil Rule 7.1(d)(1).  For the reasons stated herein, the motion is

21   granted.

22                                    **BACKGROUND**

23        On June 9, 2006 Plaintiff entered into a loan transaction ("Loan") with World Savings

24   Bank, FSB ("WSB").  The loan was secured by Plaintiff's primary residence, located at 1020

25   Harding Street, Escondido, California 92027 (the "Property").  Plaintiff alleges the loan was

26   subsequently assigned to Wachovia, and that he is currently in default on the Loan. (Compl. ¶¶ 7

27

28   ─────────────────────
          [1] The complaint erroneously names Wachovia as "Wachovia Mortgage Corporation."

1   and 17.)

2        On June 5, 2009, Plaintiff brought the instant action in the Superior Court of the State of

3   California for the County of San Diego, "based, in part, on [Wachovia's] failure to provide

4   accurate material disclosures and a loan modification for the subject loan transaction." (Compl. ¶

5   1.) The complaint contains 12 causes of action: (1) violation of the Federal Truth in Lending Act

6   ("TILA"), 15 U.S.C. § 1601 et seq. for failure to provide Plaintiff with two "Right to Cancel"

7   forms for the Loan; (2) violation of TILA for failure to make required loan disclosures; (3)

8   violation of Cal. Civ. Code § 2923.6; (4) violation of California's Rosenthal Fair Debt Collection

9   Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 (e) and (f); (5) violation of Cal. Bus. & Prof.

10  Code § 17200 *et seq.*; (6) breach of the implied covenant of good faith and fair dealing; (7)

11  cancellation of instrument; (8) quiet title; (9) accounting; (10) unconscionability; (11) rescission in

12  equity; and (12) unjust enrichment. Wachovia removed the case to this Court on July 10, 2009.

13  (Doc. No. 1.) Wachovia now seeks to dismiss all claims Plaintiff has brought against it.

14                                  **DISCUSSION**

15  I.   Legal Standard

16        A complaint must contain "a short and plain statement of the claim showing that the

17  pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule

18  12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in

19  the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). A

20  complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it contains "enough facts

21  to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544,

22  570 (2007). The court only reviews the contents of the complaint, accepting all factual allegations

23  as true, and drawing all reasonable inferences in favor of the nonmoving party. Knievel v. ESPN,

24  393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the court need not accept

25  "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

26  Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has

27  not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S.

28  519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that,

1    because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129

2    S. Ct. at 1950.

3         However, "[w]hen there are well-pleaded factual allegations, a court should assume their

4    veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  A

5    claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw

6    the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing

7    Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,'

8    but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a

9    complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

10   line between possibility and plausibility of entitlement to relief.' " Id. (citing Twombly, 550 U.S. at

11   557).  The Court may deny leave to amend the complaint where a complaint previously has been

12   amended, or where amendment would be futile.  Allen v. City of Beverly Hills, 911 F.2d 367, 373

13   (9th Cir. 1990).

14   II.    Plaintiff's Request for Judicial Notice[2]

15        Plaintiff has requested that the Court take judicial notice of several documents pursuant to

16   Fed. R. Evid. 201: (1) Plaintiff's designation of Howard, Nassiri, LLP as his attorney; (2) the

17   "Treasury's Bank Bailout List" published by Propublica.com; (3) The U.S. Department of the

18   Treasury's Home Affordable Modification Program Guidelines; (4) an order from the Supreme

19   Court of South Carolina which "temporarily stopped all foreclosure actions in the state;" and (5)

20   Wachovia's Home Affordable Modification Participation Agreement with the United States of

21   America.  The Court has reviewed these documents and finds they  have no bearing on the Court's

22   decision in this order.  Accordingly, the Court denies Plaintiff's request for judicial notice in its

23   entirety as moot.

24   III.   Preemption

25        Plaintiff has alleged eight state law causes of action: (1) violation of Cal. Civ. Code §

26   2923.6; (2) violation of Cal. Civ. Code § 1788; (3) Cal. Bus. & Prof. Code § 17200 et seq.; (4)

27

28        [2] Defendant has also requested that the Court judicially notice several other documents.  The
     Court will address this request, as appropriate, throughout the remainder of this Order.

breach of implied covenant of good faith and fair dealing; (5) cancellation of instrument; (6) quiet title; (7) accounting; (8) unconscionability; (9) rescission in equity; and (10) unjust enrichment.

Wachovia argues all of Plaintiff's state law claims are preempted by federal law because Wachovia is a federally chartered savings bank regulated by the Office of Thrift Supervision ("OTS") pursuant to the Home Owners Loan Act ("HOLA"). Plaintiff disputes Wachovia's status as a federal savings association, and argues even if Wachovia is subject to HOLA, his claims are not preempted.

    A.    HOLA and the OTS

"The HOLA, a product of the Great Depression of the 1930's, was intended 'to provide emergency relief with respect to home mortgage indebtedness' at a time when as many as half of all home loans in the country were in default." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 159 (1982). HOLA provided for the creation of a system of federal savings and loan associations, Id., which are also termed "thrift institutions" or "thrifts."[3] "Through HOLA, Congress gave the OTS broad authority to issue regulations governing thrifts." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008); see also 12 U.S.C. § 1464 (2009) (entitled "Federal Savings Associations" and providing, *inter alia*, that the Director of the OTS "is authorized, under such regulations as the Director may prescribe–(1) to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks), and (2) to issue charters therefor.") The OTS is the principal regulator for federal savings associations, Silvas, 514 F.3d at 1005, and as HOLA created the OTS, entities the OTS regulates are subject to HOLA.

    B.    Wachovia's Status as a Federal Savings Association

It is undisputed that Plaintiff received his loan from WSB on June 9, 2006. Wachovia contends that WSB was a federal savings bank at that time, and that WSB changed its name to Wachovia Mortgage, FSB on January 1, 2008. In support of this contention, Wachovia has

---

[3] "[S]avings-and-loan association. A financial institution–often organized and chartered like a bank–that primarily makes home mortgage loans but also usu[ally] maintains checking accounts and provides other banking services.–Often shortened to S&L.–Also termed *loan association*; *thrift institution*; *thrift*." Black's Law Dictionary 1371 (8th ed. 2004).

09c1498

submitted, *inter alia*, two printouts from the website of the Federal Deposit  Insurance

Corporation, Inc ("FDIC"),[4] and has requested the Court take judicial notice of these documents.

One printout, entitled "History of Wachovia Mortgage, FSB," states, in relevant part:

| | | | |
|---|---|---|---|
| 1. | 10/8/1987 Hills 27076[5] | Institution Established.  Original name: Wachtung Bank for Savings ([FDIC Certificate Number)]: |
| 2. | 1/21/1995 | Changed name to World Savings Bank, F.S.B. (27076) |
| 3. | 1/21/1995 | Changed primary regulatory agency from [FDIC] to Office of Thrift Supervision |
| [...] | | |
| 6. | 12/31/2000 | Acquired World Savings and Loan Association, A Federal Savings Loan Associati[on] in Oakland, California. |
| 7. | 4/16/2001 | Changed name to World Savings Bank, Fsb (27076) |
| 8. | 12/31/2007 | Changed name to Wachovia Mortgage, Fsb (27076) |

[Ex. 4 to Def.'s Request for Judicial Notice ISO Motion ("Def.'s RJN"), p. 13, available at

http://www2.fdic.gov/idasp/main_bankfind.asp.]  The other printout, entitled  "Your  Bank at a

Glance," states, in relevant part:

> Wachovia Mortgage, FSB (FDIC Cert: 27076) is FDIC Insured.
> Wachovia Mortgage, FSB has been FDIC Insured since October 8, 1987.
> It was established on October 8, 1987.
>
> [...]
>
> Wachovia Mortgage, FSB is chartered as a Savings Association.  Therefore the
> primary regulator is the Office of Thrift Supervision (OTS).  For consumer
> assistance regarding an issue with this institution, please contact [the OTS]
> directly[.]

(Ex. 4 to Def.'s RJN, p. 12, available at http://www2.fdic.gov/idasp/main_bankfind.asp.)

In ruling on a motion to dismiss for failure to state a claim, "a court may generally

---

[4] " [12 U.S.C. § 1811(a)] establishes the Federal Deposit Insurance Corporation ("FDIC") which insures the deposits of all banks and savings associations which are entitled to the benefits of insurance under the Federal Deposit Insurance Corporation Act.  The policies behind the creation of the FDIC are promoting the stability and confidence in the nation's banking system."  10 Am. Jur. 2d Banks and Financial Institutions  § 30 (2009).

[5] " Certificate Number (Cert, FDIC Certificate Number) [¶]: A unique number assigned by the  FDIC  to  identify  Institutions  and  for  the  issuance  of  insurance  certificates." http://www2.fdic.gov/sod/sodHelp.asp?barItem=8.

consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  Federal Rule of Evidence 201 provides, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Information on government agency websites "have often been treated as proper subjects for judicial notice." Paralyzed Veterans of Am. v. McPherson, 2008 U.S. Dist. LEXIS 69542, at *17 (N.D. Cal. Sept. 8, 2008) (citations omitted).  United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.'  This includes public records and government documents available from reliable sources on the Internet." (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999))).

Here, Plaintiff "contests the exhibits' authenticity, and [argues] the exhibits are subject to reasonable dispute."  (Opp. at 3.)  Particularly, Plaintiff "disputes the accuracy of Defendant's timeline of becoming a federal savings bank and whether Defendant was at all times relevant subject to HOLA." (Id.)  However, Plaintiff provides no reason why the FDIC printouts are subject to reasonable dispute, or any indication why the FDIC's website's accuracy could reasonably be questioned.  The Court finds the printouts are matters of public record, provided by a government agency for public review, and accordingly takes judicial notice of Exhibit 4 to  Defendant's Request for Judicial Notice pursuant to Fed. R. Evid. 201.  These judicially-noticed facts show that at the time Plaintiff signed his loan with WSB, that institution was regulated by the OTS, and later changed its name to Wachovia Mortgage, FSB, remaining under the regulatory power of the OTS, and therefore subject to HOLA.

C.    Preempted Causes of Action

As mentioned *supra*, Wachovia argues all of Plaintiff's state law causes of action are preempted by HOLA and OTS regulations.  12 C.F.R. § 560.2, one of the federal regulations governing federal savings and loan associations, expressly provides that a federal thrift's lending

activities are not to be regulated by state law:

> OTS hereby occupies the entire field of lending regulation for
> federal savings associations. OTS intends to give federal savings
> associations maximum flexibility to exercise their lending powers in
> accordance with a uniform federal scheme of regulation.
> Accordingly, federal savings associations may extend credit as
> authorized under federal law, including this part, without regard to
> state laws purporting to regulate or otherwise affect their credit
> activities

12 C.F.R. § 560.2(a) (2009). Section 560.2 also provides a list of the types of state laws that are

preempted. Id. § 560.2(b) (2009). Moreover, paragraph (c) provides that state contract,

commercial, real property, and tort law, among others, are not preempted, "to the extent that they

only incidentally affect the lending operations of Federal savings associations or are otherwise

consistent with the purposes of [the regulation]." Id. § 560.2(c) (2009). Although it is generally

presumed that Congress does not intend to preempt state law absent a clear manifestation of intent

to the contrary, that presumption is not applicable to the field of lending regulation of federal

savings associations. Silvas, 514 F.3d at 1005.

> Preemption analysis in this context accordingly proceeds in three steps.
>
> When analyzing the status of state laws under § 560.2, the first step will be to
> determine whether the type of law in question is listed in paragraph (b). If so, the
> analysis will end there; the law is preempted. If the law is not covered by paragraph
> (b), the next question is whether the law affects lending. If it does, then, in
> accordance with paragraph (a), the presumption arises that the law is preempted.
> This presumption can be reversed only if the law can clearly be shown to fit within
> the confines of paragraph (c) [providing that state laws of general applicability only
> incidentally affecting federal savings associations are not preempted]. For these
> purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be
> resolved in favor of preemption.

Id. (citing the OTS's provision for preemption analysis under § 560.2, OTS, Final Rule, 61 Fed.

Reg. 50951, 50966-67 (Sept. 30, 1996)).

Plaintiff argues his state law claims are not of the type listed in § 560.2(b) because he seeks

relief under state tort, contract and real property laws of general applicability that do not explicitly

regulate lending activities. (Opp. at 4-5.) Plaintiff cites, _inter alia_, Gibson v. World Sav. & Loan

Assn. in support of this contention.[6] Gibson explained, "the state cannot dictate to the Bank how

---

[6] Relying on his earlier citation of the Ninth Circuit's Silvas opinion, Plaintiff contends the
Ninth Circuit "went on to" cite Gibson for the proposition that "HOLA does not preempt unfair
competition law ("UCL") claims in which the "predicated acts were violations of the general legal

it can or cannot operate, but it can insist that, however the Banks chooses to operate, it does so free

from fraud and other deceptive business practices." <u>Gibson v. World Savings & Loan Assn.</u>, 103

Cal. App. 4th 1291, 1299 (Cal. Ct. App. 2002).   However, the Ninth Circuit has clearly held §

560.2's field preemption is broad enough to include the types of state law claims Plaintiff has

raised here.

   The plaintiffs in <u>Silvas</u> brought claims for unfair advertising and unfair competition against

a federal savings association under Cal. Bus. & Prof. Code  §§ 17500 and 17200.  <u>See</u> <u>Silvas</u>, 514

.3d at 1003.  The Ninth Circuit held § 560.2 occupied the field and upheld the dismissal of the

claims because they were based on the types of laws listed § 560.2(b), specifically subsections

(b)(9) and (b)(5), which involved state laws purporting to impose requirements regarding

disclosure and advertising as well as loan-related fees.  <u>Id.</u> at 1006-07.  In so holding, the <u>Silvas</u>

court did not look to the "abstract nature of the cause of action allegedly preempted"[7]  but rather to

the functional "as-applied" effect of maintaining the causes of action upon lending operations.

"The question was not whether state law simply set a minimum standard forbidding fraudulent and

unfair practices, as suggested by cases like <u>Gibson</u>.  The question was whether an application of a

given state law to the activities of federal savings associations would 'impose requirements'

regarding the various activities broadly regulated by the OTS."  <u>Naulty v. Greenpoint Mortg.</u>

<u>Funding, Inc.</u>, 2009 U.S. Dist. LEXIS 79250, at *12-13 (N.D. Cal. Sept. 2, 2009).  <u>Accord</u>

<u>Andrade v. Wachovia Mortgage</u>, 2009 U.S. Dist. LEXIS 34872, at *7 (S.D. Cal. Apr. 21, 2009)

(finding, in light of <u>Silvas</u> that "[e]ven state laws of general applicability, such as tort, contract,

and real property laws, are preempted if their enforcement would impact thrifts in areas listed in §

---

duties with which every business must comply."  (Opp. at 6.)  In reality, the Ninth Circuit's decision
in <u>Silvas</u> did not discuss <u>Gibson</u> at all, and Plaintiff has cited the *district court order* the Ninth Circuit
affirmed in <u>Silvas</u>.  Further, that district court decision rejected <u>Gibson</u> as inapposite to the plaintiff's
argument against preemption because <u>Gibson</u> did not involve claims specific to the defendant's
lending activities.  <u>Silvas v. E*Trade Mortg. Corp.</u>, 421 F. Supp. 2d 1315, 1320 (S.D. Cal. 2006).
Moreover, in <u>Silvas</u> the Ninth Circuit rejected the general presumption against preemption relied upon
in <u>Gibson</u>.  <u>Silvas</u>, 514 F.3d at 1005; <u>see also</u> <u>Naulty v. Greenpoint Mortg. Funding, Inc.</u>, 2009 U.S.
Dist. LEXIS 79250, at *12 n.3 (N.D. Cal. Sept. 2, 2009) (discussing <u>Gibson</u>, 103 Cal. App. 4th at
1300, and ultimately finding a plaintiff's various state law claims against a federal savings association
were preempted by § 560.2(b) because all of the claims were based on allegations pertaining to the
defendant's lending operations.)

  [7] <u>Naulty</u>, 2009 U.S. Dist. LEXIS 79250, at *12.

560.2(b).")

All of Plaintiff's state law claims are based upon some combination of Plaintiff's allegations that: (1) Defendant did not provide him with proper TILA loan disclosures, including two properly-prepared notices of right to cancel; (2) Defendant did not provide him with a Truth in Lending Disclosure when the loan transaction closed; (3) the loan transaction was fraudulent because the loan documents failed to clearly and conspicuously disclose that timely payments would nevertheless result in negative amortization, increasing the principal amount of the loan; (4) Plaintiff has defaulted on his loan, but could afford monthly mortgage payments if Wachovia modified his loan payments; (5) Defendant has refused to modify Plaintiff's loan payments, but Plaintiff is still willing to participate in loan modification; and (6) Modification of the loan would be more profitable for Defendant than foreclosure.  (See generally Compl.  ¶¶ 7-21.)

In short, each state cause of action is premised upon allegations regarding Defendant's lending obligations, including: terms of credit, 12 C.F.R. § 560.2(b)(4);[8] disclosure, Id. § 560.2(b)(9);[9] and processing, origination, and servicing of mortgages, Id. § 560.2(b)(10).[10] "These activities are matters committed by Congress to regulation by a federal agency." Naulty, 2009 U.S. Dist. LEXIS, at *14.  Accordingly, the Court finds Plaintiff's state causes of action are expressly preempted by 12 C.F.R. § 560.2(b).[11]  The following causes of action are therefore dismissed with prejudice: violation of Cal. Civ. Code § 2923.6; violation of Cal. Civ. Code § 1788; Cal. Bus. & Prof. Code § 17200 et seq.; breach of implied covenant of good faith and fair

---

[8]  "The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan[.]"  12 C.F.R. § 560.2(b)(4) (2009).

[9]  "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants[.]"  12 C.F.R. § 560.2(b)(9) (2009).  Accord Silvas, 514 F.3d at 1006-07 (holding any state law that purports to regulate a federal savings and loan's lending activities, and more specifically its loan related disclosure and advertising practices, is expressly preempted.)

[10]  "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]" 12 C.F.R. § 560.2(b)(10) (2009).

[11]  As Plaintiff's claims are expressly preempted, the Court does not reach the second and third steps of the inquiry described in Silvas.

1    dealing; cancellation of instrument; quiet title; accounting; unconscionability; rescission in equity;

2    and unjust enrichment.

3    IV.    Plaintiff's Federal Claims

4         Plaintiff's remaining causes of action arise under TILA.  His first cause of action alleges he

5    did not receive the required "Right to Cancel" forms, and therefore he has up to three years to

6    rescind his loan.  His second cause of action alleges the disclosures in his loan documents were

7    inadequate.

8         A.    TILA Rescission

9         TILA and its regulations[12] require, in transactions subject to rescission, that "a creditor

10   shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind."

11   15 U.S.C. § 1635(a) (2009); 12 C.F.R. § 226.23(b)(1) (2009).  TILA's "buyer's remorse" provision

12   allows borrowers three business days to rescind, without penalty, a consumer loan that uses their

13   principal dwelling as security.  15 U.S.C. § 1635(a) (2009).  If the lending institution fails to

14   deliver the required notice, the borrower may rescind the loan within three years after it was

15   consummated. 15 U.S.C. § 1635(f) (2009); 12 C.F.R. § 226.23(a)(3) (2009).

16        Here, Plaintiff alleges WSB "did not provide Plaintiff with two 'Right to Cancel' forms for

17   the subject loan."  (Compl. ¶ 26.)  However, Defendant has produced a document entitled "World

18   Savings: Notice of Right to Cancel."  (Ex. 6 to Def.'s RJN.)  At the bottom of that document there

19   is a text box  which states

20        Acknowledgment of Receipt of Copies [¶] BY MY SIGNATURE WHICH
          FOLLOWS, I acknowledge that I received two copies of this Notice of Right to
21        Cancel to keep (plus one to sign and return to World)

22   Below this text there is a signature line, where the signature of "Anthony Mark Curcio" appears,

23   dated  June 12, 2006.  Plaintiff does not dispute the authenticity of this document, but merely

24   argues his allegations "must be accepted as true for purposes of Defendant's Motion to Dismiss."

25   (Opp. at 10.)

26        Plaintiff is incorrect.    A court generally may not consider matters beyond the pleadings on

27   a Rule 12(b)(6) motion,  but "a document is not 'outside' the complaint if the complaint

28   _____

          [12]  12 C.F.R. §§ 226.1 *et seq.* ("Reg Z.")

1   specifically refers to the document and if its authenticity is not questioned."  Branch v. Tunnell, 14

2   F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara,

3   307 F.3d 1119 (9th Cir. 2002).  Here, the complaint specifically refers to the notice of right to

4   cancel, or rather, the lack thereof.  The document Defendant has produced clearly shows Plaintiff's

5   acknowledgment that he received two copies of the required notice of right to rescind.  Plaintiff

6   does not dispute the authenticity of the document, and therefore the Court may properly consider it

7   in deciding this motion.[13]  As the acknowledgment on the Notice of Right to Cancel  clearly

8   contradicts the sole factual basis for Plaintiff's rescission claim, that claim necessarily fails.  To

9   the extent Plaintiff seeks to premise a rescission claim on Defendant's failure to provide him with

10  two 'Right to Cancel' forms, this claim is dismissed with prejudice.  However, if Plaintiff is able

11  plausibly state a TILA rescission claim on an alternative basis, the Court grants him leave to

12  amend this cause of action.[14]

13       B.   TILA Damages Claim

14  Plaintiff alleges Defendant has violated TILA's general disclosure requirements, as set

15  forth in 12 C.F.R. §§ 226.17 and 226.19.  Section 226.17 provides, *inter alia*, "[t]he creditor shall

16  make the disclosures required by this subpart clearly and conspicuously in writing, in a form that

17  the consumer may keep."  12 C.F.R. § 226.17 (2009).  Section 226.19 governs disclosure

18  requirements for "certain mortgage and variable-rate transactions."  12 C.F.R. § 226.19 (2009).

19  Plaintiff bases his allegations in part on Defendant's alleged failure to provide him with a

20  truth in lending disclosure.  (See e.g. Compl. ¶ 36.)  However, Defendant has produced a

21  document entitled "World Savings: Federal Truth In Lending Disclosure Required By Regulation

22  Z."  (Ex. 7 to Def.'s RJN.)  At the bottom of that document is a signature field which states above

23  it, in relevant part, "By signing below, you acknowledge that you received a copy of this

24  _____

25       [13] Defendant has requested the Court judicially notice this document pursuant to Branch v.
    Tunnell.  Although Branch sets forth the rule allowing a court to consider documents attached to a
26  Rule 12(b)(6) motion so long as the complaint specifically refers to the document and its authenticity
    is not questioned, Branch does not provide an independent basis for judicial notice.  Therefore,
27  although the Court considers Ex. 6 to Def.'s RJN pursuant to Branch, Defendant's Branch-based
    request for judicial notice is denied.

28       [14] The Court does not reach Defendant's argument that Plaintiff must allege tender of the
    amount of indebtedness.

1   FEDERAL TRUTH IN LENDING DISCLOSURE."  On the signature line appears Plaintiff's

2   signature, "Anthony Mark Curcio," dated June 16, 2006.  The complaint has specifically addressed

3   Defendant's alleged failure to provide this document, and Plaintiff has not contested its

4   authenticity; the Court therefore may consider it for purposes of this motion.  Branch, 14 F.3d at

5   453.[15]  As the document shows Defendant provided Plaintiff with a truth in lending disclosure,

6   Plaintiff's TILA damages claim, to the extent it is premised on Defendant's failure to provide such

7   a disclosure, is dismissed with prejudice.

8          The remainder of Plaintiff's allegations comprise what appears to be an assertion

9   Defendant violated 12 C.F.R. §§ 226.17 and 226.19 (Compl. ¶ 35), surrounded by several

10  paragraphs of allegations about Defendant's deficient disclosures, primarily with respect to

11  disclosure of the terms of the interest rate and the nature of the payment plan.  However, the

12  complaint fails to indicate: (1) which of these factual allegations are violations of § 226.17 and

13  which are violations of § 226.19; (2)  which of the numerous subsections of §§ 226.17 and 226.19

14  the alleged actions allegedly violated; and (3) why the allegedly deficient disclosures were

15  insufficiently "clear and conspicuous."  The Court accordingly finds the second cause of action

16  does not give Defendant fair notice of the actions they allegedly  undertook in violating TILA.

17  Furthermore, as noted *supra*, it is improper for the Court to assume "[Plaintiff] can prove facts that

18  [he] has not alleged or that the defendants have violated the . . . laws in ways that have not been

19  alleged."  Associated Gen. Contractors, 459 U.S. at 526.  Plaintiff's claims for TILA "material

20  disclosure" violations are accordingly dismissed without prejudice.[16]

21                                    **CONCLUSION**

22          For the reasons stated in this Order, the Court GRANTS Defendant's motion to dismiss the

23  complaint.  Plaintiff's state law causes of action are dismissed WITH PREJUDICE, as are any

24  _____

25          [15] Defendant has again requested that the Court judicially notice this document pursuant to Branch.  The Court denies this request for the same reasons set forth in footnote 13, *supra*.

26          [16] Defendant has the raised the argument that Plaintiff's damages claims are time-barred by
27  TILA's one year statute of limitations, and Plaintiff argues the statute of limitations should be equitably tolled.  The Court declines to reach the statute of limitations or equitable tolling issues until Plaintiff cures the deficiencies noted herein, should he choose to amend his complaint.  However, the
28  Court admonishes Plaintiff that any amended complaint must include facts sufficient to plausibly trigger the doctrine of equitable tolling.

1  claims for TILA violations premised upon Defendant's failure to provide two 'Right to Cancel'

2  forms or a truth in lending disclosure.  However, the Court grants Plaintiff leave to amend his

3  TILA rescission claim to the extent he is able to plausibly do so, and grants Plaintiff leave to

4  amend his TILA damages claim to cure the deficiencies noted herein.

5       The Court GRANTS the Defendant's request for judicial notice in part and DENIES it in

6  part, as set out in this Order.  The Court DENIES AS MOOT Defendant's request for judicial

7  notice of each exhibit not expressly discussed herein.  The Court also DENIES AS MOOT

8  Plaintiff's request for judicial notice.

9  **IT IS SO ORDERED.**

10

11  **DATED:  October 14, 2009**

12                                                              _____
                                                                **IRMA E. GONZALEZ, Chief Judge**

13                                                              **United States District Court**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28